OPINION
{¶ 1} Defendant-appellant, James R. Carnes, appeals his conviction and sentence from the Brown County Court of Common Pleas for multiple sexual offenses.
 {¶ 2} Appellant was charged with 20 counts of gross sexual imposition for having sexual contact with a female child under the age of 13 years of age during the period from January 31, 1998 to January 30, 1999 and from January 31, 1999 to January 30, 2000, and with four counts of sexual imposition for having sexual contact with the same child who was then under the age of 16 during a twelve-month period in 2002. Appellant requested a trial by jury. The jury found him guilty on all counts as charged, and the trial court sentenced appellant to prison. Appellant initiated the instant appeal, setting forth eight assignments of error.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "The jury erred to the prejudice of Defendant-Appellant by finding him guilty of gross sexual imposition and sexual imposition, as those findings were not supported by sufficient evidence."
 {¶ 5} Appellant presents several separate arguments as he challenges the sufficiency of the evidence for his convictions.[1]
 {¶ 6} In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of syllabus.
 {¶ 7} Appellant cites the case of Valentine v. Konteh
(C.A.6, 2005), 395 F.3d 626, in support of his argument that his constitutional due process rights were violated when the multiple-count indictment and bill of particulars contained 24 general counts and did not clearly apprise him of the nature of the charges and specific dates of the offenses to protect from issues of double jeopardy.
 {¶ 8} An indictment is sufficient if it contains the elements of the charged offense, sufficiently apprises the defendant so that he can defend the charges, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Valentine at 631, citingRussell v. United States (1962), 369 U.S. 749, 82 S.Ct. 1038.
 {¶ 9} To satisfy the due process requirement, the charge set out in an indictment must either be "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B); State v. Hous, Greene App. No. 02CA116, 2004-Ohio-666, ¶ 4. Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood that the offense was committed at some time prior to the time of filing of the indictment."
 {¶ 10} Ohio courts have generally held that in matters involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses cannot always be determined. State v. Daniel (1994), 97 Ohio App.3d 548, 556 (in such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period). Unless times or dates are essential elements of the offenses, such specific times and dates need not be set forth in an indictment or bill of particulars. See Statev. Bell (Apr. 30, 2001), Butler App. No. CA990-7-122; see Statev. Sellards (1985), 17 Ohio St.3d 169.
 {¶ 11} Appellant's indictment was issued in April 2003, a bill of particulars in June 2003, and appellant's trial was held November 4 and 5, 2004. The record does not reflect that appellant objected to the form of the indictment before trial as required by Crim.R. 12(C), and thus, he waives all but plain error. State v. Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412, ¶ 7-9; State v. Frazier, 73 Ohio St.3d 323, 332, 1995-Ohio-235;State v. Moreland (1990), 50 Ohio St.3d 58, 62 (plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise); Statev. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus (notice of plain error under Crim.R. 52[B] is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice).
 {¶ 12} Appellant was charged with committing gross sexual imposition during the years 1998, 1999 and 2000. For that time frame and as pertinent here, R.C. 2907.05 stated that no person shall have sexual contact with another, not the spouse of the offender "* * * when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).
 {¶ 13} R.C. 2907.01(B) defined "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 14} Appellant was also charged with two counts of misdemeanor sexual imposition under R.C. 2907.06(A)(1) and two misdemeanor counts under R.C. 2907.06(A)(4) for alleged acts that took place in 2002, when the victim was over the age of 13.
 {¶ 15} R.C. 2907.06 stated that no person shall have sexual contact with another, "not the spouse of the offender * * * whenany [emphasis added] of the following applies:
 {¶ 16} "(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard. * * *
 {¶ 17} "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."
 {¶ 18} Our review of the indictment in the case at bar indicates that the indictment stated and provided notice of all the essential elements of the offenses lodged against appellant. Therefore, there was no error with the indictment.
 {¶ 19} Appellant also requested and received a bill of particulars. The purpose of a bill of particulars is to "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense," thereby providing the accused with a fair and reasonable opportunity to prepare his defense in light of a legally sufficient, but general indictment. State v.Bennett, Brown App. No. CA2004-09-028, 2005-Ohio-5898, ¶ 32.
 {¶ 20} Despite the nearly 16-month gap between the issuance of the bill of particulars and trial, appellant failed to ask for an amendment to or additional information on the bill of particulars he received.
 {¶ 21} When appellant failed to ask that the bill of particulars be amended, he "cannot be heard to complain," and again, the matter will be reviewed for plain error only. Statev. De Righter (1945), 145 Ohio St. 552, 555; State v.Robinson, Lake App. No. 2004-L-146, 2005-Ohio-6286 (appellant waived all but plain error on appeal when he failed to object to form of the indictment or state's bill of particulars as required by Crim.R. 12); State v. Bennett, 2005-Ohio-5898 at ¶ 34 (where defendant alleged that bill of particulars was insufficient to clarify indictment, defendant's failure to request amendment to bill precludes him from establishing prejudice).
 {¶ 22} We have reviewed the bill of particulars and do not find that the language contained therein rises to the level of plain error. As this court found in State v. Bennett, not only did appellant fail to raise and argue to the trial court any prejudice from the lack of specificity in the indictment or bill of particulars, appellant's defense strategy centered on his assertions that regardless of the time, date, and manner of the allegations, he never engaged in sexual conduct with the victim.Bennett, 2005-Ohio-5898 at ¶ 33; State v. Barnecut (1988),44 Ohio App.3d 149, 151-152 (case presented issues of witness credibility where no alibi was alleged and defendant simply asserted that the conduct did not occur).
 {¶ 23} Appellant further argues that there was insufficient evidence to convict him of the charges because the testimony of the victim was equally nonspecific as to time, place, and conduct.
 {¶ 24} As we begin a discussion of this argument, we reiterate that we do so within the framework of appellant's defense strategy, which consisted of the assertion that he never engaged in any criminal or improper conduct toward the victim.
 {¶ 25} Furthermore, and as we previously noted, child sexual abuse cases present unique challenges. In many cases, the victims are unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time. State v. Mundy (1994), 99 Ohio App.3d 275, 296; see State v. Robinette (Feb. 27, 1987), Morrow App. No. CA-652;State v. Barnecut, 44 Ohio App.3d at 151-152.
 {¶ 26} "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." Robinette.
Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." Id.;Barnecut at 152.
 {¶ 27} In the case at bar, appellant and the victim were related and lived in the same household for the years in which the abuse was alleged to have occurred. Further, the victim was under 13 years of age for the first two years of the alleged abuse. Some allowance for the inexactitude of her memories must be made. See State v. McGill (Dec. 8, 2000), Greene App. No. 99CA25.
 {¶ 28} In the instant case, the victim, who indicated that her date of birth was January 31, 1987, testified that appellant would come into her bedroom and rub her legs "in an inappropriate way," would walk into the bathroom and look at her when she was showering, would "grope my breasts and butt and he would rub me in my vaginal area." The victim also testified that appellant would come into her room at night, expose himself and take her hand and try to get her to touch his privates. The victim indicated that appellant was successful in getting her to touch his privates only once briefly because, "I just tried so hard not to do it."
 {¶ 29} The victim testified that this inappropriate touching began when she was 11 or 12 and occurred at least three times a week until she, her mother, and her two siblings moved away from their Brown County home.[2]
 {¶ 30} Upon specific questioning by the prosecutor, the victim stated that the touching incidents occurred at least 10 times when she was 11 years old and at least 10 times when she was 12 years old. The victim also provided more detail upon the state's questions, testifying that appellant would grab her buttocks after giving her a hug, would touch her breasts both over and under her clothing, and despite her attempts to "scoot" away from him, appellant would stick his hand between the victim's legs and rub her "vaginal area" while the two were riding in the car.
 {¶ 31} Combined within his sufficiency challenge, appellant argues that the state failed to establish venue on the incident when the victim testified that appellant would rub her vaginal area while the two of them were riding in a car.
 {¶ 32} Again, we note that appellant failed to raise the specific issue of venue with the trial court.[3] Therefore, the issue of venue is waived, but for plain error. See State v.Rankin, Clinton App. No. CA2004-06-015, 2005-Ohio-6165, ¶ 12.
 {¶ 33} R.C. 2901.12(H) indicates that where an offender commits offenses in multiple jurisdictions as part of a course of criminal conduct, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred."
 {¶ 34} Under R.C. 2901.12(H), and as pertinent here, any of the following is prima facie evidence of a course of criminal conduct: the offenses involved the same victim; the offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another; the offenses were committed in furtherance of the same purpose or objective; the offenses involved the same or a similar modus operandi.
 {¶ 35} The victim clearly testified that many, if not most, of the acts of touching occurred in the family home in Brown County and occurred at least three times a week for specific years. Therefore, we do not find plain error or any error by the common pleas court with respect to establishing venue in Brown County for the car rides or any of the alleged acts. State v.Rankin, 2005-Ohio-6165; c.f. State v. Copeland, Butler App. No. CA2003-12-320, 2005-Ohio-5899 at ¶ 18-20 (defendant had a significant nexus with county in which he was being prosecuted in conducting the activities which led to his trial and conviction).
 {¶ 36} Appellant also argues that neither the allegation that he observed the victim while she was in the shower, nor the allegation that he rubbed her thighs constituted sexual contact under the statute.
 {¶ 37} The victim testified that appellant rubbed her thighs in a manner she felt was inappropriate. R.C. 2907.01 specifically includes "thigh" as an erogenous zone, if touched in a manner to sexually arouse or gratify either person. The manner in which the touching occurred will be discussed later in this opinion.
 {¶ 38} We agree with appellant's contention that the allegation that he watched the victim taking a shower does not involve prohibitive touching as described in the imposition statutes. However, the testimony was evidence that appellant engaged in a specific course of conduct toward the victim. Further, the victim's sister testified that she observed appellant enter the bathroom and open the shower curtain to view the victim. The sister's testimony adds corroboration that appellant displayed a certain manner of conduct toward the victim.[4]
 {¶ 39} The corroborating testimony is significant because the statute dealing with misdemeanor sexual imposition requires some other evidence of contact in addition to the victim's testimony. R.C. 2907.06.[5] The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and need not go to every essential element of the offense charged. State v. Economo, 76 Ohio St.3d 56,59-60, 1996-Ohio-426). "Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." Id.
 {¶ 40} Finally, appellant argues that there was insufficient evidence that any of the alleged touching was for the purpose of sexually arousing or gratifying either person. See R.C.2907.01(B).
 {¶ 41} While the purpose of sexual arousal or gratification is an essential element of gross sexual imposition and sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification. In reAnderson (1996), 116 Ohio App.3d 441, 444; In re D.S.,160 Ohio App.3d 552, 2005-Ohio-1803, ¶ 19. Whether touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. Anderson at 443-444. While touching itself is not sufficient for a conviction, the act of touching may constitute strong evidence of intent. In re D.S.
at ¶ 19.
 {¶ 42} The trier of fact may infer as to defendant's motivation in making the physical contact with the victim, and if the jury determines that "the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." State v. Cobb (1991),81 Ohio App.3d 179, 185.
 {¶ 43} Construing the evidence most favorably for the state on appellant's sufficiency challenges outlined above, there was sufficient evidence for the jury to find that appellant touched the victim 24 times for the purpose of sexual arousal or gratification of either person. See, e.g., State v. McGill,
Greene App. No. 99CA25 (evidence sufficient where child victim testified that she did not know how many times accused abused her, but indicated that two types of specific conduct occurred more than once and started in kindergarten).
 {¶ 44} While we are mindful that the charging instrument and the testimony presented should be as specific as possible about the conduct that constitutes a particular criminal count, after reviewing the record, we reject appellant's argument regarding constitutional infirmities with the charging instrument, and find that a reasonable jury could have found all the elements of the charged offenses beyond a reasonable doubt. Appellant's first assignment of error is overruled.
 {¶ 45} Assignment of Error No. 2:
 {¶ 46} "The jury erred to the prejudice of Defendant-Appellant by finding him guilty of gross sexual imposition and sexual imposition, as those findings were contrary to law."
 {¶ 47} Under this assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.
 {¶ 48} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 49} A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 50} Appellant generally asserts that this court, upon reviewing the entire record, must conclude that the jury created a manifest miscarriage of justice. We disagree.
 {¶ 51} In addition to the testimony we previously outlined, there was testimony in the state's case that the victim and siblings were home schooled by their mother for many years until the victim reached her freshman year of high school. There was testimony from different witnesses that the victim's mother worked evenings into the overnight five days a week, thereby providing appellant with the opportunity to have contact with the victim as he served as the caretaker of the children during that time.
 {¶ 52} The jury also heard testimony from the victim's sister that she observed appellant put his hand down the front of the victim's shirt on two occasions, rub lotion on the victim's legs, and try to kiss the victim.[6]
 {¶ 53} The victim's sister indicated that she would follow the victim around the house, remain in the bathroom on occasions when the victim was showering, and would stay in the victim's bedroom at night because of the things she saw appellant do toward the victim. On cross-examination, the victim's sister testified that she believed she witnessed these incidents three or four months before the family moved in February 2003.
 {¶ 54} The victim indicated that when she was 13 years of age, she wrote a letter to her mother about appellant, but the victim testified that appellant discovered the note on the victim's dresser, told the victim that he would not behave in this manner, and destroyed the note. The victim testified that she eventually told her sister what was happening, and wrote a second letter that her sister took to their mother.
 {¶ 55} The victim's mother testified that the victim's sister brought her a note about appellant. The mother testified that, after receiving the note, she called appellant at work and asked him about the contents of the letter, contacted law enforcement and protective services, and moved the rest of the family out of the house.
 {¶ 56} Appellant presented an adult witness who testified that he lived in the family home for several months from 1998 to 1999 and never observed any inappropriate behavior between appellant and the victim. Appellant's mother testified that she did not observe any issues between appellant and the victim and the victim never confided to her about any improper behavior, despite the fact that the grandmother felt she had a close relationship with the victim.
 {¶ 57} Appellant testified in his own behalf that none of the inappropriate actions occurred. While appellant said he had no explanation for why the victim would allege such conduct, he indicated that the victim might not appreciate the limits he placed on her activities with her friends.
 {¶ 58} Reviewing the record before us and keeping in mind the applicable standard of review on a manifest weight of the evidence challenge, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction should be overturned and a new trial ordered. The jury was in the best position to judge the credibility of the witnesses and to resolve conflicts in their testimony. Appellant's second assignment of error is overruled.
 {¶ 59} Assignment of Error No. 3:
 {¶ 60} "The trial court erred to the prejudice of Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29."
 {¶ 61} The standard of review on a trial court's denial of a Crim.R. 29 motion for acquittal is the same as that employed for a challenge to the sufficiency of the evidence. State v.Rucker, Butler App. No. CA2001-04-076, 2002-Ohio-172; State v.Goodwin, Franklin App. No. 05AP-267, 05AP-268, 2006-Ohio-66, ¶8.
 {¶ 62} We have considered the sufficiency of the evidence for the convictions for multiple counts of gross sexual imposition and sexual imposition under the first assignment of error and overruled the same. For those same reasons, appellant's third assignment of error is overruled.
 {¶ 63} Assignment of Error No. 4:
 {¶ 64} "The trial court erred to the prejudice of Defendant-Appellant by allowing the Brown County Job and Family Services investigator to testify as an expert under Ohio Rules of Evidence, Rule 702."
 {¶ 65} Appellant asserts that the trial court erred in sua sponte recognizing the investigator as an expert witness to present the testimony that, in her professional experience, it was not unusual for sexual abuse victims to wait years before they disclosed abuse.
 {¶ 66} Under Evid.R. 702, a witness may testify as an expert if qualified by specialized knowledge, skill, experience, training or education regarding the subject matter, and the testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons. The trial court is granted broad discretion to admit or exclude such testimony. State v.Meredith, Warren App. No. CA2004-06-062, 2005-Ohio-062, ¶ 7, 17; see, also, Evid. R. 104.
 {¶ 67} The determination of whether a witness possesses the qualifications necessary to allow his expert testimony lies within the sound discretion of the trial court. State v. Clark
(1995), 101 Ohio App.3d 389, 411. Such determination will not be reversed by an appellate court unless there is a clear showing of an abuse of discretion on the part of the trial court. Id.
 {¶ 68} The investigator testified that she had nine years of training and experience in her position as investigator and had investigated "hundreds" of cases involving alleged sexual abuse. The investigator then proceeded to testify that, it was not unusual for children to wait years before they disclosed incidents of abuse.
 {¶ 69} The investigator clearly had knowledge and experience beyond that possessed by lay persons concerning child sexual abuse victims and their propensities, with regard to reporting or not reporting the alleged abuse. After reviewing the record, we do not find that the trial court abused its discretion in permitting the investigator to testify and in admitting this testimony. Appellant's fourth assignment of error is overruled.
 {¶ 70} Assignment of Error No. 5:
 {¶ 71} "The trial court erred to the prejudice of Defendant-Appellant by allowing the State to reference [the victim's] letter in any way because it was never provided to Defendant as required by Ohio Rules of Criminal Procedure, Rule 16(B)(D)."
 {¶ 72} This assignment of error is problematic. This court was required to piece together from the record the sequence of events regarding the letter written by the victim and the discovery issues it presents. While this letter may have been extensively discussed by the trial court and counsel before and throughout the trial, we were not made privy to such discussions by transcript or App.R. 9 supplements to the record.
 {¶ 73} Not until the conclusion of the first day of testimony, did the transcript provide a glimpse of the events surrounding the discovery sanctions. After the jury had been dismissed for the day, the state apparently proffered the letter to the trial court. The trial court indicated that the failure to provide the letter in discovery "may be prejudicial" and that it had found that appellant did not have the opportunity to inspect the letter and prepare for it.
 {¶ 74} Crim.R. 16(E)(3) provides: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this [discovery] rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or * * *, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 75} The record shows that the trial court chose the strict remedy on the discovery violation and prohibited the state from introducing the letter into evidence. However, the trial court amended its order during trial to permit some testimony that the victim wrote a letter about the incident or incidents and that this letter was the method the victim chose to divulge the information to her mother. There is nothing in the record to indicate that appellant responded to the trial court's ruling with a request for a continuance to address the admission of evidence for this limited purpose. See State v. Miller, Preble App. No. CA2002-02-004, 2002-Ohio-6109 (discounted accused's claim of prejudice when accused did not request continuance after trial court overruled his objection to admission of evidence that firearm was operable and original defense was premised on inoperability of firearm).
 {¶ 76} As the admission or exclusion of evidence is within the discretion of the trial court, we do not find that the trial court abused its discretion in permitting the introduction of evidence that a letter was written and given to the victim's mother.[7] There is no evidence in the record that the state's discovery violation was willful, and given his defense that the victim was claiming incidents that never occurred, there is no evidence that foreknowledge would have benefited appellant, or that he was unfairly prejudiced. See State v. Otte,74 Ohio St.3d 555, 563, 1996-Ohio-108.
 {¶ 77} Appellant also argues that the state was permitted to discuss the letter in its opening statement and therefore, "the damage was already done."
 {¶ 78} As we previously noted, we cannot glean from the record the status of the letter at the beginning of trial. It is troubling that the state would mention the letter in its opening statement if it knew that the letter was being excluded. However, we also note that appellant did not object to the state's opening statements and the transcript indicates that there were opportunities to do so. Therefore, appellant has waived this issue absent plain error. See State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 102.
 {¶ 79} The state indicated in its opening statement that the victim wrote a letter to her mother. "[The victim] did prepare a letter that she gave to her mother outlining what had happened, although not giving any specific details or a great deal of detail of information about what was happening. * * *."
 {¶ 80} After reviewing the record, we note that the trial court cautioned the jury that opening statements were not evidence. Not only must we presume that the jury obeyed the trial court's instructions, State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, we cannot say that, but for these opening comments, the outcome of the trial clearly would have been otherwise. State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. Appellant's fifth assignment of error is overruled.
 {¶ 81} Assignment of Error No. 6:
 {¶ 82} "The trial court erred to the prejudice of Defendant-Appellant by utilizing sentencing procedures which was [sic] unconstitutional."
 {¶ 83} Assignment of Error No. 7:
 {¶ 84} "The trial court erred to the prejudice of Defendant-Appellant by imposing a sentence that is contrary to law."
 {¶ 85} Both of these assignments of error contest appellant's prison sentence for the felony offenses. The sixth assignment of error cites to Washington v. Blakely (2004), 542 U.S. 296,124 S.Ct. 2531; Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348; and U.S. v. Booker (2005), 543 U.S. 220,125 S.Ct. 738. The seventh assignment of error challenges the trial court's required statutory findings, or lack thereof to impose consecutive sentences.
 {¶ 86} The trial court in the case at bar imposed more than the minimum sentence and consecutive sentences. See R.C.2929.14(B) and R.C. 2929.14(E). While this appeal was pending, the Ohio Supreme Court released State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856; and State v. Mathis, ___ Ohio St.3d ___,2006-Ohio-855. According to Foster, which we previously examined in State v. Hooks, Butler App. Nos. CA2004-02-047, CA2004-02-050, CA2004-02-051, 2006-Ohio-1272, certain portions of the sentencing statutes were deemed unconstitutional and severed, including those implicated here, which required the trial court to make certain findings to impose consecutive and more than the minimum sentences. Therefore, we are required to reverse the prison sentence imposed for the felony offenses and remand this case for resentencing. See Hooks.[8] Appellant's sixth and seventh assignments of error are sustained.
 {¶ 87} Assignment of Error No. 8:
 {¶ 88} "The trial court erred to the prejudice of Defendant-Appellant in determining him to be a sexual predator under Ohio Rev. Code Chapter 2950 et. seq., as that finding was contrary to law."
 {¶ 89} Appellant argues that his classification as a sexual predator is against the manifest weight of the evidence.
 {¶ 90} The Ohio Supreme Court has held that R.C. Chapter 2950 is remedial in nature and not punitive. State v. Cook,83 Ohio St.3d 404, 423, 1998-Ohio-291, and therefore, the trial court's determination that an offender is a sexual predator will be upheld if the court's judgment is supported by some competent, credible evidence going to all the essential elements of the case. State v. Brooks, Franklin App. No. 02AP-925, 2003-Ohio-2192, ¶ 6; State v. Brown, Butler App. No. CA2005-04-085, 2006-Ohio-338, ¶ 4.
 {¶ 91} A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). When making its determination, a trial court can classify an individual as a sexual predator only if it concludes that the state has established both prongs of the definition by clear and convincing evidence, after considering "all relevant factors" in making this determination. R.C. 2950.09.
 {¶ 92} There appears no dispute that the offenses for which appellant was convicted constitute sexually oriented offenses under the applicable sexual predator statue.
 {¶ 93} A trial court shall and the trial court in the instant case did consider all relevant factors, including, but not limited to: the offender's age; the offender's past criminal conduct and if a criminal history, whether sentence served or treatment obtained; the age of the victim; whether multiple victims were involved; whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; mental illness or disability of offender; the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; whether offender displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 94} Although the standard set forth in R.C. 2950.01(E) looks toward a defendant's propensity to engage in future behavior, a trier of fact may look at past behavior as well, as past behavior is often an important indicator of future propensity. Brown, 2006-Ohio-338 at ¶ 5.
 {¶ 95} After reviewing the transcript of the sexual predator hearing and the comments made by the trial court at that hearing, we find that competent, credible evidence supports the trial court's determination that appellant is a sexual predator. SeeState v. McComas, Franklin App. No. 05AP-134, 2006-Ohio-380 (young age of six-year old child victim and defendant's willingness to victimize family member were telltale signs of likelihood to reoffend); State v. Jackson, Franklin App. No. 05AP-101, 2005-Ohio-5094, ¶ 36-40 (age of minor victim and multiple incidents were indicators of accused's inability to refrain from criminal conduct); see, generally, State v.Eppinger, 91 Ohio St.3d 158, 2001-Ohio-380 (under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication).
 {¶ 96} Accordingly, appellant's eighth assignment of error is overruled.
 {¶ 97} Judgment reversed and remanded for resentencing only.
Walsh, P.J., and Bressler, J., concur.
[1] We must caution appellant to be cognizant of the language used for his assigned errors. We interpret his first assignment of error as a general challenge on the sufficiency of evidence for his convictions.
[2] The victim's mother testified that the family left appellant and moved away in February 2003.
[3] We acknowledge that appellant contested sufficiency issues when he moved for judgment of acquittal under Crim.R. 29 both at the conclusion of the state's case and after all testimony had been presented. However, while appellant moved for acquittal, he never provided specific arguments regarding what he was contesting and therefore, never gave the trial court the opportunity to address the specific issues raised here.
[4] As we will discuss later in this opinion, the victim's sister also testified to observing appellant touching the victim's chest and legs.
[5] R.C. 2907.06(B) states that no person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.
[6] The state did not ask the victim's sister to elaborate on the lotion and kissing incidents. The victim's sister later testified that the kissing she observed between appellant and the victim was different than the kisses the victim's sister received from her mother.
[7] We note that the trial court still did not permit the letter or its contents to be published to the jury.
[8] In resentencing appellant on remand, the common pleas court shall consider those portions of the sentencing code unaffected by Foster, and impose any sentence within the appropriate felony range.